**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT MCSWEENEY, <br><br> *Plaintiff,* <br><br> v. <br><br> RESURGENT CAPITAL SERVICES, L.P. and LVNV FUNDING LLC, <br><br> *Defendants.* | Civil Action No.: 1:26-cv-05411 <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Robert McSweeney ("Plaintiff" or "Mr. McSweeney"), by and through his undersigned counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1.  Plaintiff, a 73-year-old retired resident of New York City, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and New York General Business Law § 349 ("GBL § 349"), against Resurgent Capital Services, L.P. ("Resurgent") and LVNV Funding LLC ("LVNV") (together, "Defendants").

2.  Defendants have repeatedly attempted to collect from Plaintiff at least six consumer debts, totaling $6,502.48, that Plaintiff does not owe. The debts belong to a different, much younger man with a similar name who appears to reside in West Haven, Connecticut. Plaintiff has never opened, used, or paid any of the accounts at issue, and has never resided in Connecticut.

3.  Plaintiff disputed the debts in writing and provided Defendants with his driver's license, his Social Security card, a notarized affidavit, a Federal Trade Commission identity-theft report, and a police report. Defendants' response was to demand the very documents

already in their possession, declare themselves "unable to validate" Plaintiff's claim, and continue collecting — while adding newly acquired wrong-person accounts to their collection efforts after each dispute.

4. Beginning on July 25, 2025, and on at least three further occasions thereafter, Plaintiff's counsel notified Defendants in writing that Plaintiff is represented by counsel and that all communications concerning the debts must be directed to counsel. Defendants ignored those notices. Between January 23, 2026 and March 17, 2026 alone, Defendants communicated directly with Plaintiff at least fourteen times — seven collection emails and seven collection letters mailed to his home — in plain violation of 15 U.S.C. § 1692c(a)(2).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a). The Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, where Plaintiff resides and where he received Defendants' collection communications.

7. Defendants regularly transact business in this District. Resurgent is licensed by the New York City Department of Consumer and Worker Protection as a debt collection agency, License No. 1204239-DCA.

## PARTIES

8. Plaintiff Robert James McSweeney is a natural person who resides in New York County, New York. He is 73 years old and retired.

2

9.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he is a natural person whom Defendants allege to be obligated to pay debts.

10.     The obligations Defendants have sought to collect from Plaintiff — purported credit card and consumer wireless account balances — are "debts" as defined by 15 U.S.C. § 1692a(5) because they are alleged obligations of a consumer to pay money arising out of transactions primarily for personal, family, or household purposes.

11.     Defendant Resurgent Capital Services, L.P. is a Delaware limited partnership with its principal place of business at 55 Beattie Place, Suite 110, Greenville, South Carolina 29601. Resurgent manages and services portfolios of defaulted consumer receivables for debt buyers, including LVNV, and regularly collects or attempts to collect, directly or indirectly, defaulted consumer debts owed or due or asserted to be owed or due another. Resurgent operates under NMLS ID No. 2301.

12.     Resurgent is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

13.     Defendant LVNV Funding LLC is a Delaware limited liability company with its principal place of business in Greenville, South Carolina. LVNV purchases portfolios of defaulted consumer debts for collection and is the purported current owner of five of the six accounts at issue. By its own statements in collection communications sent to Plaintiff, "LVNV Funding LLC outsources the management of its portfolio of accounts to" Resurgent.

14.     LVNV acquires defaulted debts and has as a principal purpose of its business the collection of such debts, which it carries out through agents and servicers including Resurgent. LVNV is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and is liable for the collection activities undertaken by Resurgent on its behalf.

**FACTUAL ALLEGATIONS**

*A. Plaintiff and the Misattributed Debts*

15. Plaintiff has maintained excellent credit.  He has no defaulted debts, maintains security freezes at all three national credit reporting agencies, and, prior to the events described herein, had never been contacted by a debt collector.

16. Defendants have asserted that Plaintiff owes at least six defaulted consumer accounts: (a) a Credit One Bank, N.A. account ending 3126, with a claimed balance of $1,073.53 (Resurgent Reference ID 791551510); (b) a Credit One Bank, N.A. account ending 3103, with a claimed balance of $1,787.95 (Reference ID 791536048); (c) a WebBank (Avant) account ending 4785, with a claimed balance of $1,619.32 (Reference ID 793422193); (d) a Capital One, N.A. (Walmart Rewards) account ending 6913, with a claimed balance of $766.47 (Reference ID 816029673); (e) a Capital One, N.A. (QuicksilverOne) account ending 9175, with a claimed balance of $764.21 (Resurgent ID 834625297); and (f) a Verizon Wireless account ending 0001, with a claimed balance of $491.00 (Reference ID 611316296), owned by non-party Pinnacle Credit Services, LLC and serviced by Resurgent. LVNV is the purported current owner of the first five accounts.

17. Plaintiff has never opened, used, or made any payment on any of these accounts, and has never had any relationship with Credit One Bank, WebBank, Avant, or the account-issuing arms of Capital One or Verizon reflected in the accounts.

18. Defendants' own records identify a different debtor. A May 12, 2025 debt validation letter concerning the WebBank account was addressed to a Robert McSweeney at 6 Lincoln Pl, West Haven, Connecticut 06516. The account statements Resurgent itself later mailed to Plaintiff as "validation" are addressed to "Robert A McSweeney" or

"Robert McSweeney" at 6 Lincoln Pl or 57 Highland Ct, West Haven, Connecticut. Plaintiff's middle name is James, and he has lived in New York City at all relevant times.

19. The "last payment" dates Resurgent's letters attribute to these accounts reflect payments Plaintiff never made on accounts relating to someone else.

**B. Resurgent's Collection Campaign and Threats of Legal Action**

20. Beginning no later than April 2025, Resurgent directed a campaign of collection emails to Plaintiff's personal email address, sent under the persona "Michele." By email dated June 28, 2025, Resurgent solicited payment on the Credit One account ending 3103, asserting a balance of $1,787.95 and offering "numerous payment options."

21. By email dated July 24, 2025, Resurgent wrote to Plaintiff under the subject line "Robert, a legal review may be approaching." Upon information and belief, no legal review of any claim against Plaintiff was approaching or intended, and no lawsuit concerning any of the accounts has ever been filed against Plaintiff.

**C. Notice of Representation and Plaintiff's Disputes**

22. By email dated July 25, 2025, Plaintiff's counsel notified Resurgent that this firm represents Plaintiff, that Plaintiff does not owe the referenced debt, that Resurgent appeared to have confused Plaintiff with a different and much younger Robert McSweeney in West Haven, Connecticut, and that "[a]ll communications from here forward, whether written or verbal, must be conducted through my office."

23. By letter dated August 7, 2025, sent by certified mail to Resurgent's Managing Counsel, Plaintiff's counsel again gave notice of representation as to "any purported debt(s) you believe he owes, including but not limited to" the Credit One accounts ending 3126 and 3103 and the WebBank account ending 4785; formally disputed the debts as belonging to a different Robert McSweeney; demanded written confirmation that collection would

cease; and enclosed: (i) copies of Plaintiff's driver's license and Social Security card; (ii) the identity-theft report Plaintiff had filed with the Federal Trade Commission on May 9, 2025, Report No. 187295550; (iii) the report Plaintiff had filed with the New York City Police Department on May 10, 2025, Complaint No. 2025-19-003450; and (iv) Plaintiff's notarized affidavit, executed July 10, 2025, attesting that he has never had any connection to the accounts.

24. By three unsigned form letters dated August 19, 2025, Resurgent responded by requesting documentation — including a police report and a notarized identity theft affidavit — that counsel had already provided.

25. By letter dated September 15, 2025, sent by USPS Priority Mail, Plaintiff's counsel again gave notice of representation, re-enclosed the complete August 7, 2025 dispute package, and demanded cessation of collection.

26. By form letters dated September 30, 2025, addressed to Plaintiff's counsel, Resurgent stated as to each of the three then-known accounts that "we were unable to validate your claim," and again requested, among other things, "[a] copy of a filed police report regarding the fraud" and "[a] completed and notarized identity theft affidavit" — documents that had been in Resurgent's possession since August 2025.

27. As evidenced by its repeated demands for documents already in its possession and by its own "validation" enclosures identifying a different debtor at a different address, it is clear that Resurgent conducted no meaningful investigation of Plaintiff's disputes.

**D. Defendants' Post-Representation Direct Communications with Plaintiff**

28. On or about January 20, 2026, LVNV purchased a Capital One QuicksilverOne account ending 9175. Despite having been repeatedly informed that Plaintiff was represented by counsel with regard to any alleged debts, Resurgent sent a collection email dated January

23, 2026 directly to Plaintiff, asserting that he owed $764.21 on that account and inviting him to "resolve" it through Resurgent's payment portal.

29. Between January 23, 2026 and February 7, 2026, Resurgent emailed Plaintiff directly at least seven times concerning the account ending 9175, by emails dated January 23, January 26, January 28 ("Please Address this Urgent Financial Matter"), January 30 ("give us a chance…"), February 1 ("Resurgent's Self-Service Options"), February 5, and February 7, 2026, each soliciting payment.

30. By letter dated February 2, 2026, Plaintiff's counsel notified Resurgent — for at least the fourth time — that Plaintiff is represented by counsel, disputed the account ending 9175 along with the previously disputed accounts, and demanded that Resurgent cease contacting Plaintiff directly. The letter was delivered to Resurgent on or about February 17, 2026.

31. Resurgent's February 5 and February 7, 2026 emails soliciting payment on the account ending 9175 were sent after counsel's written dispute of that account and before Resurgent provided any verification of the debt.

32. By letter dated February 20, 2026, mailed directly to Plaintiff's home, Resurgent demanded payment of $766.47 on a fourth LVNV account — a Capital One (Walmart) account ending 6913 that had never previously been raised with Plaintiff — and instructed Plaintiff to dispute the debt by April 1, 2026 if he contested it.

33. By eleven letters dated February 21, 2026, Resurgent acknowledged review of Plaintiff's disputes. Resurgent addressed those letters to "Jason Verhagen - Schlanger Law Group" — but mailed them to Plaintiff's home address, Apt 8G, 25 E 86th Street, New York, NY, rather than to counsel's office. The letters were hand-delivered to Plaintiff in early

March 2026 by his co-op building staff, who asked Plaintiff whether the letters were his. The episode was highly embarrassing to Plaintiff.

34. The February 21, 2026 letters state that Resurgent had "initiated a review of the inquiry recently received either directly or from Shepherd Outsourcing, LLC, the current servicer of this account."

35. By five form letters dated March 12, 2026, each mailed directly to Plaintiff's home and received by Plaintiff in batches on or about March 21 and March 23, 2026, Resurgent stated that it was "unable to validate" Plaintiff's identity-theft claim as to each of the accounts ending 4785, 6913, 0001, 3126, and 3103, requested (again) a police report and a notarized identity theft affidavit, and enclosed blank identity theft affidavit forms — notwithstanding that Plaintiff's police report and notarized affidavit had been in Resurgent's possession since August 2025, and notwithstanding four notices that Plaintiff was represented by counsel.

36. The March 12, 2026 letter concerning the Verizon Wireless account ending 0001 asserted a $491.00 balance with a last payment date of November 26, 2010 — a debt more than fifteen years old — and bore the New York State Department of Financial Services disclosure acknowledging that "the legal time limit (statute of limitations) for suing you to collect this debt may have expired." That account is owned by non-party Pinnacle Credit Services, LLC and was a sixth account never previously raised with Plaintiff.

37. By letter dated March 17, 2026, again mailed directly to Plaintiff's home and received on or about March 24, 2026, Resurgent stated it was "unable to validate" Plaintiff's claim as to the account ending 9175. The enclosed "validation" — a Capital One QuicksilverOne statement — is addressed to "ROBERT A MCSWEENEY" at 6 Lincoln Pl, West Haven,

Connecticut: a different person, with a different middle initial, at a different address in a different state.

38.    In total, after receiving unequivocal written notice that Plaintiff was represented by counsel, Defendants communicated directly with Plaintiff in connection with the collection of the debts at least fourteen times — seven emails and seven letters — and separately caused eleven more collection-related letters to be delivered to Plaintiff's home misaddressed to his counsel's name at Plaintiff's residence.

### E. Injury to Plaintiff

39.    Defendants' conduct has caused Plaintiff actual damages, including emotional distress, anxiety, fear of unwarranted legal action against him, aggravation, embarrassment — including embarrassment before the staff of his residential building, who handled and inquired about the misdirected collection letters — invasion of privacy, and the loss of considerable time and expense spent disputing debts he does not owe, including the costs of faxing, certified mailings, and assembling government reports and a notarized affidavit.

40.    Plaintiff, a 73-year-old retiree who had never before been contacted by a debt collector, has been subjected to this campaign continuously since April 2025, and the campaign has escalated — from emails, to letters mailed to his home, to new accounts being added — notwithstanding every dispute and notice his counsel has submitted.

**FIRST CAUSE OF ACTION**

**Violation of 15 U.S.C. § 1692c(a)(2) — Direct Communication with a Represented Consumer (Against All Defendants)**

41.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

9

42. Section 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, the attorney's name and address, unless the attorney consents or fails to respond.

43. Defendants knew Plaintiff was represented by counsel with respect to the debts no later than July 25, 2025, and were re-noticed on August 7, 2025, September 15, 2025, and February 2, 2026. Counsel's name, address, telephone number, and email appeared on each notice, and Resurgent corresponded directly with counsel at the firm's offices on September 30, 2025 and February 20, 2026.

44. Defendants nonetheless communicated directly with Plaintiff in connection with the collection of the debts at least fourteen times between January 23, 2026 and March 17, 2026, as set forth above. Counsel never consented to direct communication with Plaintiff and never failed to respond to any communication from Defendants.

45. As a result of Defendants' violations, Plaintiff suffered actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering, and is entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**Violation of 15 U.S.C. § 1692e — False, Deceptive, or Misleading Representations (Against All Defendants)**

46. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

47. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, including falsely representing the character, amount, or legal status of any debt (§

10

1692e(2)(A)), threatening to take any action that cannot legally be taken or that is not intended to be taken (§ 1692e(5)), and using any false representation or deceptive means to collect or attempt to collect any debt (§ 1692e(10)).

48.    Defendants violated § 1692e by, among other things: (a) repeatedly representing that Plaintiff owed the six debts described above when he owes none of them, including attributing to Plaintiff payment dates and account histories belonging to a different person; (b) representing on July 24, 2025 that "a legal review may be approaching" when, upon information and belief, no such review was approaching or intended; (c) representing in form letters dated September 30, 2025, March 12, 2026, and March 17, 2026 that Resurgent had "completed" a "review of the claim and account" and was "unable to validate" Plaintiff's claim, while demanding documents already in Resurgent's possession and enclosing account records that on their face identify a different debtor; and (d) continuing to demand payment of a more-than-fifteen-year-old, time-barred Verizon obligation from a consumer who never held the account.

49.    As a result of Defendants' violations, Plaintiff suffered actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering, and is entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Violation of 15 U.S.C. § 1692f — Unfair or Unconscionable Collection Practices (Against All Defendants)

50.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

51.    Section 1692f of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt, including the collection of

any amount not expressly authorized by the agreement creating the debt or permitted by law (§ 1692f(1)).

52. Defendants violated § 1692f by attempting to collect from Plaintiff $6,502.48 in debts as to which no agreement between Plaintiff and any creditor exists, because Plaintiff never opened or held any of the accounts, and by persisting in those attempts — and adding new accounts — after receiving conclusive documentation that they were pursuing the wrong person.

53. As a result of Defendants' violations, Plaintiff suffered actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering, and is entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### Violation of 15 U.S.C. § 1692d — Harassment or Abuse (Against All Defendants)

54. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

55. Section 1692d of the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

56. Defendants' course of conduct — a more-than-year-long campaign of emails and letters demanding payment of debts Plaintiff demonstrably does not owe; seven direct emails in sixteen days in early 2026; successive waves of letters mailed to Plaintiff's home after four attorney notices, including eleven letters misaddressed to counsel at Plaintiff's residence that were handled by his building staff; and the addition of new wrong-person accounts after each dispute — had the natural consequence of harassing, oppressing, and abusing Plaintiff, a 73-year-old retiree.

12

57. As a result of Defendants' violations, Plaintiff suffered actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering, and is entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

### Violation of 15 U.S.C. § 1692g — Failure to Cease Collection of a Disputed Debt (Against All Defendants)

58. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

59. Under 15 U.S.C. § 1692g(b), if a consumer notifies a debt collector in writing within thirty days of receiving notice of a debt that the debt, or any portion thereof, is disputed, the debt collector must cease collection of the debt until it obtains and mails to the consumer verification of the debt.

60. Resurgent's initial communication to Plaintiff concerning the account ending 9175 was its email of January 23, 2026. By letter dated February 2, 2026 — ten days later and within the thirty-day statutory window — Plaintiff, through counsel, disputed that debt in writing.

61. Resurgent nonetheless continued to collect on the account ending 9175, including by emails to Plaintiff dated February 5 and February 7, 2026, before mailing any verification of the debt. Resurgent did not purport to respond to the dispute concerning that account until its letter dated March 17, 2026.

62. As a result of Defendants' violations, Plaintiff suffered actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering, and is entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### Violation of New York General Business Law § 349 — Deceptive Acts and Practices (Against All Defendants)

63.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

64.    GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in the State of New York. Under GBL § 349(h), any person injured by a violation may bring an action to enjoin the unlawful acts and practices and to recover damages, with additional remedies available for willful or knowing violations, together with reasonable attorneys' fees.

65.    Defendants are among the largest debt-collection operations in the United States. Both are affiliates of Sherman Financial Group, one of the country's largest purchasers of defaulted consumer debt. Resurgent describes itself as "a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers." Upon information and belief, Defendants hold and service millions of consumer accounts nationwide, including a high volume of accounts of New York consumers, and tens of thousands of consumer complaints concerning Resurgent and LVNV appear in the Consumer Financial Protection Bureau's public complaint database.

66.    Defendants' conduct is consumer-oriented. The collection campaign directed at Plaintiff consisted of standardized, automated form communications — including form emails sent under the "Michele" persona and form dispute-response letters materially identical across all six accounts — of the kind Defendants direct at consumers at large in the ordinary course of their high-volume debt collection businesses. Upon information and belief, Defendants' procedures for responding to consumers who notify them that they are pursuing the wrong person, and that the consumer is represented by counsel, are likewise highly standardized, and the procedures Defendants applied to Plaintiff are

14

applied in the same manner to thousands of other consumers, including New York consumers.

67. Defendants engaged in materially misleading acts and practices in connection with the collection of consumer debts in New York, including: (a) repeatedly representing to Plaintiff, a New York consumer, that he owed $6,502.48 in debts that belong to a different person; (b) representing that Resurgent had "completed" a "review of the claim and account" when no meaningful review had occurred; (c) demanding, as a precondition to further investigation, documents that Defendants already possessed; (d) representing that "a legal review may be approaching" when, upon information and belief, none was intended; and (e) demanding payment of a more-than-fifteen-year-old, time-barred debt that Plaintiff never owed.

68. Plaintiff was injured as a direct and proximate result of these acts and practices, including through emotional distress, embarrassment, and the expenditure of substantial time and money disputing debts he does not owe.

69. Defendants' violations were willful and knowing. Defendants persisted in their conduct after four written notices of representation and after receiving conclusive documentation — much of it generated by Defendants' own files — establishing that Plaintiff is not the debtor.

70. Plaintiff is entitled to an order enjoining Defendants from engaging in further collection activity against him, actual damages (including both pecuniary damages and damages for emotional distress, pain, and suffering), statutory and treble damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

(a)    Declaring that Plaintiff is not liable for, and has no obligation on, the six purported debts described herein;

(b)    Permanently enjoining Defendants from engaging in any further collection activity against Plaintiff concerning the purported debts described herein;

(c)    Awarding Plaintiff actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering;

(d)    Awarding Plaintiff the maximum additional statutory damages available against each Defendant, including treble damages for Defendants' willful and knowing conduct;

(e)    Awarding Plaintiff his reasonable attorneys' fees and costs;

(f)    Awarding pre-judgment and post-judgment interest as permitted by law; and

(g)    Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: June 25, 2026

/s/ Daniel A. Schlanger
Daniel A. Schlanger
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: (212) 500-6114
F: (646) 612-7996
E: dschlanger@consumerprotection.net

Counsel for Plaintiff

16